(No. 48123.-

PAUL H. KING, Superintendent of the Illinois State Fair Agency, Appellant, v. GEORGE W. LINDBERG, Comptroller, Appellee.

*Opinion filed March 29, 1976.*

Thomas F. Londrigan, of Londrigan & Potter, of Springfield, for appellant.

William J. Scott, Attorney General, of Springfield (Douglas G. Olson, Assistant Attorney General, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Appellant, the Superintendent of the Illinois State Fair Agency, sued in the circuit court of Sangamon County for injunctive relief and a declaration that Public Act 79—1129 is unconstitutional. The trial court upheld the constitutionality of the Act. We granted appellant's motion for direct appeal under Rule 302(b). 58 Ill.2d R. 302(b).

The Act, entitled the "State Fair Board Act," was passed on November 20, 1975, over the Governor's veto, and establishes a 15-member State Fair Board to replace the present State Fair Agency. The Act provides for the selection of interim members who will be phased out over a three-year period. Of these initial members, three each are to be appointed by the Speaker and the Minority Leader of the House, the President and the Minority Leader of the Senate, and the Governor. By 1978, ten of the members will be nominated by ten State Fair districts and appointed by the Governor, and five will be appointed by the Governor with the consent of the Senate. The six constitutional executive officers (Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller, and Treasurer) and the Director of Agriculture serve as nonvoting, *ex-officio* members of the Board. The Act also requires that the Board "prepare and submit an annual budget to the General Assembly."

Because we agree with appellant's contention that the Act violates the provisions of section 9(a) of article V of the 1970 Constitution, we find it unnecessary to consider appellant's other constitutional challenges to the validity of the Act.

Section 9(a) of article V of the 1970 Illinois Constitution states in part:

> "The General Assembly shall have no power to elect or appoint officers of the Executive Branch."

This provision first appeared in the 1848 Illinois

Constitution and was first construed in *Bunn v. People ex rel. Laflin* (1867), 45. Ill. 398, a case in which a legislatively appointed board of commissioners, with the responsibility of building a new statehouse, was constitutionally challenged. There this court said:

> "Under the first Constitution of this State, nearly all the important offices of government were filled by an election on joint ballot of the two houses,—that is, by the action of the general assembly alone. The evil produced was, that the legislature became the great appointing power, giving rise to injurious combinations affecting the purity of legislation. The passage of a law, or its defeat, might be made to depend on the election of a particular individual to a particular office." *Bunn v. People ex rel. Laflin* (1867), 45 Ill. 397, 401. See also *Saxby v. Sonnemann* (1925), 318 Ill. 600, 604-05.

It is true that the Act provides for appointment by the constitutionally recognized officers of the General Assembly (see Ill. Const. 1970, art. IV, sec. 3) rather than the General Assembly as a whole. However, we cannot overlook the practical political reality that legislative leaders are themselves elected by the members of the General Assembly and are therefore responsive to the desires and directions of the legislators. We cannot allow the General Assembly to do indirectly through its officers that which the Constitution prohibits it from doing directly. The same "injurious combinations affecting the purity of legislation" (45 Ill. 397, 401), which this court denounced in *Bunn,* are as likely to occur when the officers of the General Assembly act as when that body acts as a whole.

Appellee contends that the interim board members do not hold an "office" because of the temporary nature of their positions. Section 24 of article V of the 1870 Illinois Constitution contained a definition of "office":

"An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed."

This definition was construed as having two essential elements: (1) the position must be a public one; (2) it must be a permanent position with continuing duties. (*Fergus v. Russel* (1915), 270 Ill. 304, 322.) The only temporary aspect to the positions under consideration is the tenure of the interim board members. The position itself, member of the State Fair Board, is intended to be permanent and the duties of the Board, the operation of the State Fair, are intended to be continuing duties. The fact that some incidental duties of the Board will cease in 1978 does not affect the continuing nature of the Board's primary duties. And the fact that all of the interim office holders will be replaced by permanent members of the Board by 1978 does not alter the permanent nature of the office itself.

Although a definition of "office" was not included in the 1970 Illinois Constitution, the definition in the 1870 Constitution and the construction of it by this court in *Fergus v. Russel* are helpful and persuasive. Consequently, we find that the positions in this case are State "offices."

The remaining question is whether these are officers "of the Executive Branch" within the proscriptions of section 9(a) of article V. The interim board, which will function only until November 1, 1978, has somewhat broader duties than the permanent board will have. The primary function of the permanent board is to supervise and operate the State Fair, and this is clearly an executive function. The interim board has the additional duties of dividing the State into ten State Fair districts, and establishing the procedures and rules governing the selection of the members of the permanent board. These could be considered to be legislative duties, and thus the interim board has both executive and legislative functions.

In determining whether an officeholder is an "officer of the Executive Branch," we must give the greatest consideration to his predominant or primary duties. The fact that he may have additional incidental, minor, or temporary duties will not change our determination. The primary objective of the legislature in establishing the State Fair Board was the effective operation of the Illinois State Fair. There was apparently some immediacy to the situation because the legislature decided to provide for the immediate functioning of the new State Fair Board rather than wait until after the State Fair districts and procedures for selecting board members from them had been established. Thus, these minor legislative duties were given to the interim board. The duties are merely incidental to the primary duties of the Board, the operation of the fair, and these legislative duties will terminate automatically in 1978.

In summary, we find that the members of the interim State Fair Board are "officers of the Executive Branch." Further, we find that appointments by officers of the General Assembly are subject to the same dangers as appointments by the General Assembly as a whole, and consequently they fall within the proscriptions of section 9(a) of article V of the 1970 Illinois Constitution.

Since we find Public Act 79—1129 unconstitutional because of its appointment procedures, we do not find it necessary to discuss appellant's other contentions.

The decision of the circuit court of Sangamon County is reversed.

*Judgment reversed.*